UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RALPH HARBIT,                          )
                                       )
            Petitioner,                )
                                       )
    vs.                                )        Case No. 4:22 CV 695 JMB
                                       )
MICHELLE BUCKNER,                      )
                                       )
            Respondent.                )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Ralph Harbit's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the Petition is **DENIED**.

## I.    Procedural Background

Petitioner is held by the Missouri Department of Corrections pursuant to the judgment and sentence of the Audrain County Circuit Court.  In 2017, a jury convicted him of statutory rape in the first degree and child molestation in the first degree (Doc. 9-5, p. 2).  He was sentenced to a total of 45 years' imprisonment (Id.; Doc. 1-1, p. 32).   On August 7, 2018, the Missouri Court of Appeals affirmed his conviction and sentence (Doc. 9-5).    Following an evidentiary hearing, Petitioner's motion for postconviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied by the trial court in June 2020; and,3 on August 24, 2021, the decision was affirmed on appeal to the Missouri Court of Appeals (Doc. 9-10).  On December 17, 2021, Petitioner timely filed his § 2254 petition in the District Court for the Western District of Missouri and it was

transferred to this Court on December 20, 2021 (Doc. 2).[1]  Petitioner asserts one ground for relief, that trial counsel was ineffective for failing to call two witnesses, Jessica Fogle and Deetra Clemmons.  Respondent filed a response in opposition (Doc. 9); Petitioner did not file a reply by the deadline set forth in the Case Management Order (Doc. 6).

**II.    Factual Background**

Between December 1, 2007 and June 30, 2009, Petitioner raped and molested his step-daughter, who was under the age of 12 at the time.  Some of this activity was witnessed by the victim's brother, who was the object is physical abuse by Petitioner.  Another witness observed Petitioner buy victim inappropriate clothing and extravagant gifts, activity that an expert described as "grooming" behavior to prevent the victim from disclosing the inappropriate conduct.  The victim disclosed Petitioner's conducted when she turned 16 years old.

At a post-conviction hearing in September and November, 2019, Jessica Fogle and Deetra Clemmons[2] testified along with Petitioner and his trial counsel, Mary Joe Smith.  Ms. Smith testified that she spoke to Petitioner about Ms. Fogle being a witness but that she was unable to find her (Doc. 1-1, p. 2).  Ms. Smith did not recall speaking to Petitioner about Ms. Clemmons (Doc. 1-1, p. 2).  Petitioner testified that he told Ms. Smith that Ms. Fogel lived in Mexico, Missouri and that his daughter could find her (Doc. 1-1, p. 5).  He also told Ms. Smith about Ms. Clemmons, but he didn't know where she lived other than she was in the Mexico, Missouri area (Doc. 1-1, p. 5).  An inference from his testimony is that he wrote down the names of Ms. Clemmons and Ms. Fogle and gave that list to Ms. Smith (Doc. 1-1, p. 5).

---

[1] Due to a clerical error in the transferring court, the case was not received by this Court until July 1, 2022.

[2] Ms. Clemmons changed her last name to Dorner during the pendency of Petitioner's criminal case.  The records and the parties refer to her as Ms. Clemmons; as will the Court to avoid confusion.

Ms. Clemmons testified that she was Petitioner's neighbor and that her daughter and victim

rode the bus together.  She stated that during the last six months in 2007, she babysat the victim

and her brother during the day while their mother worked (Doc. 1-1, p. 3).  Ms. Clemmons did not

hear or see anything "inappropriate in the way" Petitioner spoke to victim and further did not

"really [ ] know too much, because [she] was really not around too often" during that time period

(Doc. 1-1, p. 3).  She had no further contact with Petitioner since 2008 (Doc. 1-1, pp. 3-4).  Ms.

Fogle testified that she also babysat the victim and brother but in 2015 when she was 13 or 14

years old. (Doc. 1-1, p. 4).  She went over to Petitioner's house every day; she did not see Petitioner

interact with the victim in a negative way; nor did she observe any out-of-the-ordinary discipline

or physical contact between Petitioner and victim (Doc. 1-1, p. 4).

Additional facts will be included as necessary to address the issues.

## III.   <u>Legal Standards</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §

2254(d), allows for habeas relief in Federal court only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  A state court's decision is "contrary to" clearly established law if "it

applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it

confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court]

but reaches a different result."  <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005).  "The state court need

not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning

nor the result of the state-court decision contradicts them.'"  <u>Brown v. Luebbers</u>, 371 F.3d 458,

461 (8th Cir. 2004) (<u>citing</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)).  "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief."  <u>Id.</u>

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," <u>Brown</u>, 544 U.S. at 141; <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  <u>Id.</u> at 406.  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (quoting <u>Williams</u>, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  <u>Collier v. Norris</u>, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1).  Erroneous findings of fact by the state courts do not ensure the grant of habeas relief.  Rather, the determination of these facts must be unreasonable in light of the evidence of record.  <u>Id.</u>

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).  With respect to the first <u>Strickland</u> prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance.  <u>Id.</u> at 689.  Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted).  Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see also Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions.")  (citation omitted)).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).  Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state

court's predictive judgment.  So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the <u>Strickland</u> standard is unreasonable, not merely whether it is incorrect. [<u>Harrington v. Richter</u>, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at [102].

<u>Williams</u>, 695 F.3d at 831–32.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard."  <u>Harrington</u>, 562 U.S. at 105.  Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct.  <u>Odem v. Hopkins</u>, 382 F.3d 846, 849 (8th Cir. 2004).

## IV.    <u>Discussion</u>

As indicated above, Petitioner asserts one ground of ineffective assistance of trial counsel for failing to call Ms. Fogle and Ms. Clemmons at trial.  In his Petition, Petitioner states that they had information that would have possibly impeached the credibility of the victim and provide background as to the household dynamics (Doc. 1, p. 5).  Petitioner has not elaborated on how counsel was ineffective in failing to call these witnesses or how the state courts wrongly applied the <u>Strickland</u> standard.

In ruling on Petitioner's Missouri Supreme Court Rule 29.15 motion, the state trial court correctly identified the <u>Strickland</u> standard and found that: (1) trial counsel was reasonable and competent; (2) neither Ms. Smith (nor Petitioner's prior counsel in his first trial which resulted in a hung jury) contemplated calling Ms. Clemmons or Ms. Fogle or knew what testimony they would provide; and, (3) that Petitioner was not credible in his statement that he wrote down the names of these witnesses and gave that writing to counsel (Doc. 1-1, pp. 34).  The trial court further found that any failure to call these witnesses did not prejudice Petitioner because: (1) this evidence would have been excluded as cumulative of Petitioner's daughter's testimony, it would be more

prejudicial than probative and irrelevant; (2) the witnesses only had "very limited interaction inside the home observing" Petitioner and the victim; and (3), their limited observations were insufficient to impeach the victim or lead to different trial result in light of other evidence (including Petitioner's impeached testimony) (Doc. 1-1, pp. 35-36).   Thus, the trial court found that it would have been reasonable trial strategy to not call these witnesses because their testimony would have been cumulative, that the trial court would have excluded the testimony, and that there was no reasonable probability that their testimony would have generated a different result.

On appeal, the Missouri Court of Appeals likewise identified and applied the correct standard (Doc. 9-10, p. 7-8).   That court found that neither the testimony of Ms. Fogel nor Ms. Clemmons would have provided a viable defense.   Specifically, the court noted that Ms. Fogel's observations were from 2015, years after the relevant time period; and that, even if her testimony was from the relevant time period, her observations of appropriate public interactions would not shed light on Petitioner's interaction with victim while they were alone (Doc. 9-10, p. 9).   The court further found that Ms. Fogel's testimony would not impeach victim's testimony because the evidence already established that no one other than victim observed Petitioner having sex with the victim (Doc. 9-10, pp. 9-10).   As to Ms. Clemmons, the appeals court found that the trial court's credibility finding, that Petitioner did not inform his counsel of Ms. Clemmons' existence, was entitled to deference (Doc. 9-10, pp. 10-11).   Petitioner has not explained how the Missouri courts either unreasonably applied federal law or unreasonably determined the facts in light of the evidence.

As such, Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on the ground raised in his Petition.   The state courts correctly identified the controlling legal standard that in order for Petitioner to prevail on a claim of ineffective assistance

of counsel he must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result.  Burt v. Titlow, 571 U.S. 12, 22-23 (2013) (noting that the burden is on a petitioner to show that counsel's performance was deficient).    In finding that Petitioner failed to meet his burden, the state courts ultimately found that "[t]he decision not to call a witness is a virtually unchallengeable decision of trial strategy."  United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (quotation marks and citation omitted); English v. United States, 998 f.2d 609, 612 (8th Cir. 1993).  Specifically, the state courts found that Ms. Fogel's testimony was irrelevant and cumulative, and that Ms. Clemmons' testimony was cumulative and that counsel was not aware of her existence.  The state courts further found that even if these witnesses would have testified, Ms. Fogle's evidence was from a different time period and Ms. Clemmons, by her own testimony, did not know much of importance.  Therefore, there was no showing of prejudice and no indication that their testimony would have changed the outcome of the case.   Such conclusions are consistent with the evidence presented before the state court and an appropriate application of the Strickland standard.   Petitioner has failed to demonstrate that he is entitled to relief under § 2254.

* * * * *

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Petition of Ralph Harbit for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 335-338 (2003) (setting forth the standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.


*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of April, 2023.